EASTERN TEXAS TRACTION CO. v. BIRDSONG. (No. 1605.)*

(Court of Civil Appeals of Texas. Texarkana. April 20, 1916. Rehearing Denied May 4, 1916.)

CORPORATIONS ⨖432(12)—SALES OF CORPORATE STOCKS — AUTHORITY OF CORPORATE AGENT—EVIDENCE.

In an action for commissions due for sale of corporate stock, as well as for compensation for services rendered the corporation, evidence *held* to warrant a finding that the agent, with whom plaintiff made the contract, had authority to bind the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1737, 1743, 1762; Dec. Dig. ⨖432(12).]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

---

Action by Ellis Birdsong against the Eastern Texas Traction Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Yates, Sherrill & Starnes, of Greenville, for appellant. Clark & Leddy of Greenville, for appellee.

HODGES, J. The appellant, Eastern Texas Traction Company, was incorporated under the laws of Texas, for the purpose of constructing and operating a line of electric railroad between Dallas, Greenville, and other points. The appellee, plaintiff below, brought this suit to recover of the appellant certain sums of money claimed to be due for selling for the appellant shares of its stock and for services performed in an official capacity. It was alleged by the appellee that, soon after the organization of the appellant company, J. F. Nichols, its duly authorized agent, entered into a contract with him whereby the appellant agreed to pay the appellee $5 per share for each share of its preferred stock which he sold or caused to be sold; that the stock to be disposed of was of the par value of $100 per share, and was to be sold at $80 per share; that, acting on this contract, the appellee sold 900 shares of the stock, for which he claims compensation at the rate of $5 per share. He also pleaded in the alternative that he sold the stock above referred to at the special instance and request of the appellant, and that his services in so doing were reasonably worth $5 per share. He also alleged that from March 15, 1912, to the 18th day of November following he performed various services in procuring a right of way and depot grounds at the special instance and request of the appellant, for which he claims $1,000, and that in performing such service he incurred an expense to the amount of $275. It was also claimed by the appellee that the appellant owed him $200 for services rendered while acting as active vice president of the Guaranty Bank of Greenville. For these various items he asked for judgment. The appellant denied the contract relied on and described above, and denied the authority of Nichols to make such a contract in its behalf. It admitted that the appellee performed some service in the matters referred to, but averred that these services were voluntarily rendered, with the understanding that no charge would be made therefor; that the appellee was an officer of the appellant corporation, and that no provision had been made for the payment of a salary to him during that time; and for these reasons he was not entitled to compensation for the services rendered. The trial was before a jury, and resulted in. a general verdict for the appellee in the sum of $3,133.

According to the testimony of the appellee, he made a contract with J. F. Nichols some time in 1912 whereby Nichols agreed that the appellant corporation, for which Nichols was acting, would pay appellee $5 per share for each share of stock that he would sell or cause to be sold. That testimony was conflicting as to whether or not any such agreement had been made, but the verdict of the jury settled that issue in favor of the appellee. In this appeal the appellant insists that the evidence is not sufficient to support a finding that Nichols had authority to make that contract. It appears from the evidence that in March, 1912, the stockholders of the appellant company held their first meeting, and there was issued to G. W. Crotty stock to the amount of $800,000 in payment of franchises and grants from different cities and towns along the proposed line of the road; that there was issued to J. F. Nichols, for similar privileges, $799,500 in stock, and to W. A. Williams $500 of stock. These three men, with F. E. White, were elected the board of directors. At that meeting the following orders appear to have been made: All acts of. the original incorporators done in connection with, and all matters pertaining to, the organization of the company were ratified. The corporation assumed all liability and responsibility created by reason of any acts done or performed by the original incorporators. The company agreed to carry out and fulfill all of the contracts and agreements made by Nichols or Crotty that were in any way connected with the company or the building of the proposed railroad. It was also ordered that the board of directors proceed with the sale of preferred stock at such price and on such terms as by them were deemed proper. The board of directors elected held a meeting, and the following orders were made: The executive committee was instructed to work out the details of the issue, subscription, and sale of the preferred stock, with instructions to report to the board of directors at a future meeting. The executive committee was instructed to proceed with the work of financing and building the proposed railroad, and was given full power and authority to do and perform any and all acts necessary in connection therewith. On May 8, 1912, the board of directors had another meeting, at which all contracts and agreements theretofore made were fully ratified.

It is conceded by the appellant in its brief that at the time this contract was made with the appellee, according to the latter's testimony, Nichols was the president and the appellee was the treasurer of the corporation, and that Crotty and Nichols constituted the executive committee. At a subsequent meeting, held on May 8th, Crotty was made general manager and directed to employ as many men as he deemed necessary to carry on the work of selling stock and securing the right of way. Appellee testified that the work of disposing of the unsold preferred stock was divided by Nichols and

Crotty; Nichols assuming to dispose of a certain amount of stock allotted to the citizens of Greenville, and Crotty to dispose of stock allotted to the citizens of Dallas. The appellee resided in Greenville, and his services were enlisted both in selling stock in connection with committees of citizens in Greenville and in selling alone. He also testified that after his services were performed, and at a time when the company owed him nothing, except for the sale of stock, he called upon Mr. Crotty for compensation; that Mr. Crotty did not dispute his right to compensation, but told him to wait until some future time, and made no objection to the demand. He also testified that he was satisfied that Mr. Crotty knew of the conditions under which he was working.

It is unnecessary to dwell at any length upon the testimony adduced in support of the judgment. We have gone over it carefully, and have reached the conclusion that there was sufficient evidence, considering all of the conditions and circumstances attending the performance of the services by the appellee, to authorize the jury to find that Nichols did have authority to make the contract relied upon as the basis of the appellee's claim for commissions on the stock sold by him.

We therefore conclude that the judgment should be affirmed.